### FRISBEE *v.* STEWART.

APPEAL—REVIEW—CONFLICTING EVIDENCE.

Where the testimony on a bill to cancel an assignment of notes and mortgages is taken in open court, a finding by the presiding judge on disputed questions of fact, involving the capacity of complainant to transact business and the genuineness of her alleged signature, is entitled to great weight on appeal.

Appeal from Clinton; Daboll, J. Submitted November 15, 1899. Decided December 30, 1899.

Bill by Amy E. Frisbee against Matthias L. Stewart, Charles D. Stewart, and L. Irving Stewart, copartners as M. L. Stewart & Co., to cancel an assignment of certain notes and mortgages. From a decree dismissing the bill, complainant appeals. Affirmed.

*Almond G. Shepard* and *Edwin H. Lyon*, for complainant.

*Lyon & Hadsall*, for defendants.

MOORE, J. The bill was filed in this case to cancel an assignment of two notes and mortgages purporting to

have been made to defendants by the complainant to secure the payment of her note for $2,000.  She claims she never executed the assignment and note.  The testimony was taken in open court.  The circuit judge who heard the testimony filed the following written opinion in the case:

"In September, 1897, one Charles Farmer, of Ovid, Clinton county, applied to Mrs. Frisbee, the complainant, for her indorsement of a promissory note, to assist him in raising money.  She was willing to give it, and did, and he took it to the bank of the defendants at Owosso, and applied for a loan.  He was told there by the defendants that they did not wish to loan the money on it as it then was, but that, if the complainant wanted to borrow the money direct on her own note, with proper collateral, they would make the loan direct to her.  He returned to Mrs. Frisbee, and she delivered to him a large number of notes, mostly secured by mortgages, and they finally selected the two notes and mortgages in issue here, and, taking them collateral to the note made by her under this arrangement, advanced to her $2,000, the same being delivered to Charles Farmer for her.  This money, by the arrangement made between Farmer and complainant, he retained, and used for his own benefit.  She now files this bill, and asks that the notes and mortgages be returned to her, and the assignment declared void, for two reasons: (1) Because she says she was infirm and feeble in mind, and did not have capacity to do business and deliver the notes and mortgages; and (2) because she never signed the assignment and acknowledgment of the assignment of the mortgages.  Defendants' claim is that they acted in good faith, loaned the money direct to the complainant, and had no notice that there was anything wrong, or that there was any question about the competency of the complainant.

"I think the contention of the defendants must be sustained, and the bill dismissed.  I am satisfied that the note was given, the assignment made, and the acknowledgment taken, as appears by the papers.  It is true that, when the attention of Mr. Faxon, the notary, was first called to the matter, he did not remember the transaction, and he even made an affidavit to that effect; but, the paper being shown him, he at once recognized his signature, and, after some thought, recalled the circumstances

of the transaction, and now swears positively that he took the acknowledgment, and gives the time and place of the occurrence. Mr. Faxon is a reputable business man of Ovid, the postmaster, and well known to all the parties and to the court. I cannot think for a moment that he is not telling the truth, and must find that the note was signed, the mortgages assigned, and the assignment acknowledged, as they appear by the papers, and as claimed by the defendants.

"The question of the competency of the complainant is in the case, but, in my judgment, not so important as the other question. She certainly is not an imbecile. She is the widow of a gentleman of great business ability and shrewdness, and since his death, and for some years, has conducted her own affairs and managed her own estate, which is a large one. True, she may at times have had advice from her nephew and niece, who are with her most of the time, but there is no evidence that the management of the business and its control has ever been transferred to them, and the evidence discloses that the large number of notes and other papers were in her possession, and not in theirs, and that there has been no attempt to take the control of the business from her, or have a trustee appointed; and this was true up to the time of the trial of this case. I think she has not the strength of mind that she once had, but she seemed to comprehend what was being done in court, and to understand the issues involved, although somewhat feeble in health at the time of the trial; and it further appeared that since this transaction, and but a short time before the trial, she had given a deed of property near Chicago, and the solicitor in this case had taken and delivered it to the parties, who had never seen Mrs. Frisbee, and by his act had, it seems to me, certified to those parties that she was competent to transact that business. Certainly it would not do to say that, if it turned out to be a good bargain, she was competent, and, if a poor one, she might move to set it aside. I think the defendants are entitled to the benefit of the rule of law decided or announced in this class of cases in *Shoulters* v. *Allen*, 51 Mich. 529. There the court says:

"'It is not necessary, however, to find that Allen, when the note was given, had capacity sufficient for the transaction of ordinary business. It is enough to sustain the note that plaintiff dealt with him in good faith, and without notice of want of capacity, in a transaction not calculated to put him on his guard.'

"In this case Mr. Farmer for a long time had been a leading business man at Ovid. He was, it is true, at this time in failing circumstances, and this was known to the complainant, at least. Mrs. Frisbee was known by reputation to the bank as a woman in charge of and managing a large estate. No question had ever arisen, to their knowledge, as to her competency to properly manage it. Mr. Faxon was known to them as a business man, and the postmaster at Ovid. His certificate upon the assignment carried with it the presumption of competency and fair dealing, or at least understanding of the transaction. It seems clear to me that the defendants had a right to rely upon all this, and to advance the money, as they did, in good faith, upon the papers presented to them, and, in any view of the case, are entitled to protection.

"The bill will be dismissed, with costs to the defendants."

The questions involved are purely questions of fact. Their discussion would not be profitable to any one. The record is a very long one. The testimony is conflicting. We have the original papers before us, and also signatures for comparison, which are conceded to be genuine. While the case is not free from doubt, and some of the witnesses do not appear in an enviable position, we think the preponderance of proof is not in favor of the complainant. This, taken in connection with the fact that the witnesses were examined before the circuit judge, giving him a much better opportunity to observe the manner and appearance of the witnesses, and to judge of the credit to be given them, and to weigh the evidence, than we can have, leads us to affirm the decree of the court below, with costs.

The other Justices concurred.